## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: LANSDALE AUBREY LUCAS | * | CASE N0. 12-58779-WLH |
| CLAIRE DORIS LUCAS, | * | |
| | * | |
| Debtor. | * | CHAPTER 7 |
| LANSDALE AUBREY LUCAS | * | |
| CLAIRE DORIS LUCAS | * | |
| Movants. | * | |
| v. | * | |
| SUNTRUST MORTGAGE, INC. | * | CONTESTED MATTER |
| | * | |
| Respondent. | * | |
| | * | |

## MOTION TO STRIP LIEN SECOND MORTGAGE AS UNSECURED

**COMES NOW**, Lansdale Aubrey Lucas and Claire Doris Lucas, ("Debtors/Movants"), by and through their undersigned counsel, and file this *Motion to Strip Lien Second Mortgage As Unsecured*, pursuant to 11 U.S.C. Section 506(a) and Section 506(d) and states as follows:

1.

Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on April 2, 2014 and converted their petition to one under Chapter 7 on July 18, 2014.

2.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1334. This is a core proceeding under 28 U.S.C. Section 157 (b).

3.

Debtor owns and resides in real property located at 4123 Brooks Mill Drive, Lithonia, DeKalb County, Georgia 30038 (hereinafter referred to as "the property").

4.

The property is more particularly described as follows:

That tract or parcel of land lying and being in Land Lot(s) 79
of District 16, DeKalb County, Georgia, Being Lot(s) 69,
Block 2, Brooks Mill Subdivision, as per plat recorded in
DeKalb County, Georgia records.

Being and intending to describe the same premises conveyed in a
Deed recorded 03/16/2005, in Book 17218, Page 34.

Known as: 4123 Brooks Mill Dr

Parcel: 16-079-02-147

5.

The Debtor's real property is encumbered by two liens:

(a) Debtor's interest in the residence is subject to a **first lien** which arises out of a mortgage filed
in the property records of DeKalb County, Georgia, at Deed Book 19850 page 456, in favor of
MERS as Nominee and Agent for SUNTRUST MORTGAGE, INC., Lender, in the present
approximate amount of $274,344.00. A copy of the Security Deed is attached as **Exhibit A** and
incorporated herein by reference.

(b) Debtor's interest in the residence is subject to a **second lien** which arises out of a mortgage
filed in the property records of DeKalb County, Georgia, at **Deed Book 19952 page 622**, as
**modified at Deed Book 20487 page 380**, in favor of SUNTRUST MORTGAGE, INC. in the
present approximate amount of $59,783 and is the subject of this Motion. A copy of the Security
Deed and the Modification of Security Deed are attached as **Exhibit B** and incorporated herein
by reference.

6.

Based upon a DeKalb County Property Appraisal dated September 2, 2012, the value of
the property is $158,200.00. Said appraisal is attached hereto as **Exhibit C** and incorporated
herein by reference.

7.

The first priority security deed in the amount of $274,344.00 exceeds the value of the
property by $116,144.00.

8.

Respondent's second priority security deed in the approximate amount of $59,783.00, therefore, is completely unsecured.

9.

Respondent's claim is not secured by any other property of Debtor or Debtor's bankruptcy estate.

10.

Pursuant to 11 U.S.C. Section 506 (a), the second lien of Respondent is **wholly unsecured** and is subject to a determination that the lien securing SUNTRUST MORTGAGE, INC.'s claim is void upon entry of a discharge in this case. *In re Tanner*, 217 F.3rd 1357 (11th Cir. 2000)

WHEREFORE, Debtor respectfully requests this Honorable Court to enter an order:

(a) granting this Motion;
(b) determining the amount of the second priority lien of SUNTRUST MORTGAGE,INC. exceeds the value of the real property;
(c) determining that Respondent's second priority lien is wholly unsecured;
(d) determining that SUNTRUST MORTGAGE, INC.'S claim may be treated as an unsecured claim;
(e) voiding the second mortgage lien of SUNTRUST MORTGAGE, INC., effective upon the entry of a Chapter 7 discharge; and
(f) granting such other and further relief as the Court  deems appropriate..

Dated September 2, 2014

Respectfully Submitted,

_____/s/_____

Gregory D. Coleman
GA Bar # 177525
Attorney for Debtor

Johnson Hopewell Coleman, LLC
Trinity Office Park
4153 Flat Shoals Pkwy., Suite 322
Building C, 2nd Floor
Decatur, GA 30034
404.289.2244
gregorycoleman@bjhlawyers.com

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: LANSDALE AUBREY LUCAS, | * | CASE N0. 12-58779-WLH |
| CLAIRE DORIS LUCAS | * | |
| Debtors. | * | CHAPTER 7 |
| LANSDALE AUBREY LUCAS, | * | |
| CLAIRE DORIS LUCAS | * | |
| Movants. | * | |
| v. | * | |
| SUNTRUST MORTGAGE, INC. | * | CONTESTED MATTER |
| | * | |
| | * | |
| | * | |
| Respondent. | * | |

### NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the above Debtors have filed a Motion to Lien Strip Second Mortgage as Unsecured and related papers with the court seeking an Order stripping your lien.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion as follows: **The hearing will be held on <u>October 16, 2014</u> at 10:30am, in Courtroom 1403, Richard B. Russell Federal Building, 75 Spring Street, SW, Atlanta, Georgia 30303.**

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you have served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is : Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Spring Street, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

**Dated: September 2, 2014.**

_____/s/_____
Gregory D. Coleman
Attorney for Debtor/Movant
GA Bar # 177525

Johnson Hopewell Coleman, LLC
Trinity Office Park
4153 Flat Shoals Parkway, Suite 322
Building C, 2nd Floor
Decatur, GA 30034
404.289.2244
gregorycoleman@bjhlawyers.com

## CERTIFICATE OF SERVICE

I, Gregory D. Coleman, certify that I am over the age of 18 and that on the date set forth below, I served a copy of the foregoing MOTION and NOTICE OF HEARING electronically or by first class U.S. Mail, or by U.S. Mail Certified Return Receipt Requested, with adequate postage prepaid on the trustee, the parties in interest, and other persons or entities indicated herein at the addresses stated:

September 2, 2014

Lansdale and Claire Lucas                        **Via First Class Mail**
4123 Brooks Mill Drive
Lithonia, GA 30038

Suntrust Mortgage, Inc.                          **Via Certified, Return Receipt Requested Mail**
c/o Corporation Service Company
Registered Agent
40 Technology Parkway South
Suite 300
Norcross, GA 30092

Jerome T Lienhard, II, CEO                       **Via First Class Mail**
901 Semmes Avenue
Richmond, VA 23224

Suntrust Mortgage, Inc.                          **Via First Class Mail**
c/o Adrienne Heckstall
Bankruptcy Specialist
PO Box 85092
Richmond, VA 23286

Martha A. Miller, Chapter 7 Trustee             **Via First Class Mail**
Schulten Ward & Turner, LLP
Suite 2700
260 Peachtree Street, NW
Atlanta, GA 30303-1240

Dated: September 2, 2014.

# EXHIBIT A

Deed Book 1 9 8 5 0 Pg   456
Filed and Recorded Apr-12-2007 03:41pm
2007-0077837
Georgia Intangible Tax Paid $31.50
**Linda Carter**
Clerk of Superior Court
DaKalb County, Georgia

After recording please return to:

SUNTRUST MORTGAGE, INC.
*[Company Name]*

RVW 5093
*[Name of Natural Person]*

1001 SEMMES AVENUE
*[Street Address]*

*\*See Exhibit "B" for Intangibles Tax language.*

RICHMOND, VIRGINIA 23224
*[City, State  Zip Code]*

BURROUGHS & KEENE, LLC *[Space Above This Line For Recording Data]*
6440 Hillandale Drive
Suite 100
Lithonia, Georgia 30058
Office (770) 484-4088
Fax (770) 484-4066

Loan No.: 0205226244

## SECURITY DEED

MIN: 100010402052262445

DEFINITIONS *07011s, LUCAS*

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "**Security Instrument**" means this document, which is dated March 30, 2007, together with all Riders to this document.

(B)    "**Borrower**" is CLAIRE D LUCAS, LANSDALE A LUCAS, JOINT TENANTS.  Borrower is the grantor under this Security Instrument.

(C)    "**MERS**" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the grantee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)    "**Lender**" is SUNTRUST MORTGAGE, INC..  Lender is a **corporation** organized and existing under the laws of THE COMMONWEALTH OF VIRGINIA.  Lender's address is 901 SEMMES AVENUE, RICHMOND, VA 23224.

(E)    "**Note**" means the promissory note signed by Borrower and dated March 30, 2007.  The Note states that Borrower owes Lender  **Two Hundred Ninety Three Thousand Six Hundred  and 00/100ths** Dollars (U.S. $293,600.00) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2037.**

(F)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

Deed Book 1 9850 Pg  457

(G)   **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)   **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☒ Other(s) *[specify]* Rider to Security Deed (GA) | | |

(I)   **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   **"Escrow Items"** means those items that are described in Section 3.

(M)   **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Georgia Security Deed-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             MERS Modified Form 3011  01/01
—THE COMPLIANCE SOURCE, INC.—                            Page 2 of 14                              14301GA  08/00
www.compliancesource.com                                                                ©2000, The Compliance Source, Inc.

+ 0 2 0 5 2 2 6 2 4 4 + 0 0 A D + 2 + 1 4

Deed Book 19850 Pg 458

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **COUNTY** of **DEKALB**:

*[Type of Recording Jurisdiction]*        *[Name of Recording Jurisdiction]*

**SEE ATTACHED SCHEDULE A**

which currently has the address of **4123 BROOKS MILL DR**

*[Street]*

**LITHONIA,**                Georgia **30038**                    ("Property Address"):

*[City]*                          *[Zip Code]*

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

+ 0 2 0 5 2 2 6 2 4 4 + 0 0 A D + 3 + 1 4

# EXHIBIT  B

Deed Book 19952 Pg 622
Filed and Recorded May-16-2007 10:42am
2007-0097363
Georgia Intangible Tax Paid $111.00
**Linda Carter**
Clerk of Superior Court
DeKalb County, Georgia



LUCAS, CLAIRE D.

Record and Return To:
Fiserv Lending Solutions
600A N.JohnRodes Blvd
MELBOURNE, FL 32934

Prepared By: Diana Bass / 20071030913090 / ILS / QCPR

## SUNTRUST™



*$TI+00020071030913090+DOT*

## SECURITY DEED

**MAXIMUM LIEN.** The lien of this Security Deed shall not exceed at any one time $36,700.00.

**THIS SECURITY DEED** dated April 30, 2007, is made and executed between CLAIRE D LUCAS, whose address is 4123 BROOKS MILL DR, LITHONIA, GA 30038, AND; LANSDALE A LUCAS, whose address is 4123 BROOKS MILL DR, LITHONIA, GA 30038. (referred to below as "Grantor") and SunTrust Bank, whose address is 1945 The Exchange - Suite 250, Atlanta, GA 30339 (referred to below as "Lender").

**GRANT OF SECURITY DEED.** FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Lender resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells to Lender all of Grantor's right, title, and interest in and to the following described real property: **The Real Property is located in DEKALB County, State of Georgia and is described as follows:**

**See the exhibit or other description document which is attached to this Security Deed and made a part of this Security Deed as if fully set forth herein.**

TOGETHER WITH ANY AND ALL of the following: (i) all buildings, structures and improvements now or hereafter located on the real property or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto; (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof; (iii) all Rents accruing therefrom, whether now or hereafter due; (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon; (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof; (vi) all estates, rights, title and interest therein, or in any part or parcel thereof; (vii) all equipment, machinery, apparatus, fittings, fixtures, furniture, furnishings, mobile homes, modular homes and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and (viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

**The Real Property or its address is commonly known as 4123 BROOKS MILL DR, LITHONIA, GA 30038.**

**REVOLVING LINE OF CREDIT.** This Security Deed secures the indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor up to the maximum principal indebtedness of $36,700.00 so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Security Deed secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance. The maturity date of the Credit Agreement is April 30, 2027.

THIS SECURITY DEED, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS SECURITY DEED. IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY DEED PURSUANT TO O.C.G.A. 44-14-80 AND TO AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF SEVEN (7) YEARS FROM THE MATURITY DATE OF THE DEBT OR DEBTS SECURED BY THIS SECURITY DEED. HOWEVER, NOTHING IN THIS PARAGRAPH WILL IMPAIR LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE. THIS SECURITY DEED IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Security Deed, Grantor shall pay to Lender all amounts secured by this Security Deed as they become due and shall strictly perform all of Grantor's obligations under this Security Deed and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe

## SECURITY DEED
### (Continued)

**Page 4**

foreclosure, conveyance in lieu of foreclosure, or other means.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Security Deed:

**Notice of Proceedings.** Grantor shall immediately notify Lender in writing should all or any part of the Property become subject to any condemnation or expropriation proceedings or other similar proceedings, including without limitation, any condemnation, confiscation, eminent domain, inverse condemnation or temporary requisition or taking of the mortgaged Property, or any part or parts of the Property. Grantor further agrees to promptly take such steps as may be necessary and proper within Lender's sole judgment and at Grantor's expense, to defend any such condemnation or expropriation proceedings and obtain the proceeds derived from such proceedings. Grantor shall not agree to any settlement or compromise of any condemnation or expropriation claim without Lender's prior written consent.

**Lender's Participation.** Lender may, at Lender's sole option, elect to participate in any such condemnation or expropriation proceedings and be represented by counsel of Lender's choice. Grantor agrees to provide Lender with such documentation as Lender may request to permit Lender to so participate and to reimburse Lender for Lender's costs associated with Lender's participation, including Lender's reasonable attorneys' fees.

**Conduct of Proceedings.** If Grantor fails to defend any such condemnation or expropriation proceedings to Lender's satisfaction, Lender may undertake the defense of such a proceeding for and on behalf of Grantor. To this end, Grantor irrevocably appoints Lender as Grantor's agent and attorney-in-fact, such agency being coupled with an interest, to bring, defend, adjudicate, settle, or otherwise compromise such condemnation or expropriation claims; it being understood, however, that, unless one or more Events of Default (other than the condemnation or expropriation of the Property) then exists under this Security Deed, Lender will not agree to any final settlement or compromise of any such condemnation or expropriation claim without Grantor's prior approval, which approval shall not be unreasonably withheld.

**Application of Net Proceeds.** Lender shall have the right to receive all proceeds derived or to be derived from the condemnation, expropriation, confiscation, eminent domain, inverse condemnation, or any permanent or temporary requisition or taking of the Property, or any part or parts of the Property ("condemnation proceeds"). In the event that Grantor should receive any such condemnation proceeds, Grantor agrees to immediately turn over and to pay such proceeds to Lender. All condemnation proceeds, which are received by, or which are payable to either Grantor or Lender, shall be applied, at Lender's sole option and discretion, and in such manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Grantor and/or Lender), for the purpose of: (a) replacing or restoring the condemned, expropriated, confiscated, or taken Property; or (b) reducing the then outstanding balance of the Indebtedness, together with interest thereon, with such payments being applied in the manner provided in this Security Deed. Lender's receipt of such condemnation proceeds and the application of such proceeds as provided in this Security Deed shall not affect the lien of this Security Deed.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Security Deed:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Security Deed and take whatever other action is requested by Lender to perfect and continue Lender's security interest on the Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Security Deed, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Security Deed.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Security Deed or upon all or any part of the Indebtedness secured by this Security Deed; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Security Deed; (3) a tax on this type of Security Deed chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Security Deed, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Security Deed as a security agreement are a part of this Security Deed:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Security Deed in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Security Deed as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Security Deed may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Security Deed.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Security Deed:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Security Deed, and the Related Documents, and (2) the liens and security interests created by this Security Deed on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Security Deed, Lender shall execute and deliver to Grantor a suitable satisfaction of this Security Deed and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Security Deed if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement

## SECURITY DEED
## (Continued)

about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition.   (B)   Grantor does not meet the repayment terms of the Credit Agreement.  (C)  Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral.  This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**LENDER'S REMEDIES AND POWER OF SALE.**   Upon the occurrence of an Event of Default, Lender shall have the following rights, powers, and remedies:

**Accelerate Indebtedness.**  Lender, at Lender's option and election and without notice to Grantor, may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Entry and Possession.**  Lender may enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; and carry out or enter into agreements of any kind with respect to the Property.

**Collection of Rents.**  Lender may collect and receive all Rents from the Property and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

**Payments.**  Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part of the Property or Lender's interest in the Property.

**Other Remedies.**  Lender may exercise all rights and remedies contained in any Related Document, heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with the transactions resulting in the Indebtedness or any part thereof.

**Appointment of Receiver.**  Lender may make application to any court and be entitled to the appointment of a receiver to take charge of the Property or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver.

**UCC Remedies.**  With respect to the Personal Property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 11-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law.  Grantor shall, if Lender requests, assemble all such Personal Property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Grantor and Lender.  Any notice required to be given by Lender of a public or private sale, lease or other disposition of the Personal Property or any other intended action by Lender may be delivered personally to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Lender at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

**Power of Sale.**  Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or any part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement, published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county.  The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold.  Lender's conveyance may contain recitals as to the occurrence of an Event of Default, under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with.  The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale.  Lender may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder.  Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full.  The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorneys' fees if applicable, then to payment of the Indebtedness, and the remainder, if any, shall be paid to Grantor.  If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over. All of Lender's rights and remedies will be cumulative and may be exercised alone or together.

**Attorneys' Fees; Expenses.**  If any part of the Indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected.  Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.**  Any notice required to be given under this Security Deed, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Security Deed.  All copies of notices of foreclosure from the holder of any prior security interest which has priority over this Security Deed shall be sent to Lender's address, as shown near the beginning of this Security Deed.  Any person may change his or her address for notices under this Security Deed by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.  It will be Grantor's responsibility to tell the others of the notice from Lender.

**LOSS OF PRIORITY AS TO FUTURE ADVANCES.**  If you request a modification of the Security Instrument or if a judgment lien or other lien is placed against the Property with the result in either case that our security interest in the Property loses priority as to future advances over subsequently recorded deeds of trust, or other liens, we shall have the right to suspend additional extensions of credit or reduce your credit limit as well as the right to exercise our other rights under this agreement.

## SECURITY DEED
### (Continued)

Page 6

**MATURITY DATE.** The maturity date of the obligations secured by this Security Instrument is 20 years from the date of this Security Instrument, as first stated above.

**ARBITRATION CLAUSE. READ THIS PROVISION CAREFULLY. IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS WE HAVE AGAINST EACH OTHER ARE RESOLVED. For a Claim subject to arbitration, neither you nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate your Claim(s) with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration.**

**1.    DEFINITIONS.** As used in this Provision:

"**You**" and "**your**" means the persons obligated to repay the Credit.

"**We**", "**us**" and "**our**" means: (1) SunTrust Bank; (2) any person(s) to whom the Credit is transferred or assigned; (3) any Covered Provider; (4) the parents, subsidiaries and affiliates of the companies in (1)-(3) above; (5) the successors and predecessors of the companies in (1)-(4) above; and (6) the officers, directors and employees of the companies in (1)-(5) above.

"**Covered Provider**" means any third party that provides any product or service in connection with the Credit if (and only if) such third party is named as a co-party with us in a Claim asserted by you.

"**Credit**" means the loan or other credit extension you are receiving under this agreement or note and any prior loan or credit extension you have received from us.

"**Claim**" means any claim, dispute or controversy between you and us, other than any Excluded Claim or Proceeding, arising from or relating in any way to the Credit. The term "**Claim**" is to be given the broadest possible meaning and includes claims of every kind and nature. "**Claims**" can seek relief of any type. A party does not waive the right to require arbitration of a new Claim by bringing a Claim in a lawsuit or failing to require arbitration of another Claim. Notwithstanding the broad definition of "Claim" set forth above, a "**Claim**" shall not include any self-help or non-judicial remedy, including but not limited to acceleration of the Credit, non-judicial foreclosure, self-help repossession and/or set-off; and shall not include any individual judicial action by a party that is limited to preventing the other party from using a self-help or non-judicial remedy and that does not include a request for damages or monetary relief of any kind.

"**Excluded Claim or Proceeding**" means any of the following claims or proceedings, which will not be subject to this Arbitration Provision: (1) any individual action brought by you in small claims court or your state's equivalent court, unless such action is transferred, removed, or appealed to a different court; (2) any action to effect a judicial or quasi-judicial foreclosure; (3) any eviction or other summary proceeding to secure possession of real property securing a Credit; (4) any action to assert, collect, protect, realize upon or obtain possession of the collateral for a Credit in any bankruptcy proceeding; (5) any action to quiet title; (6) any action to the extent that it seeks provisional or ancillary remedies in connection with any of the foregoing; and (7) any individual action to prohibit any of the foregoing so long as it does not involve a request for damages or monetary relief of any kind.

"**Administrator**" means the National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com, (800) 474-2371; or the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org, as selected in accordance with this Provision. However, if both the NAF and AAA are unable to serve, the parties may agree upon another Administrator or, if they are unable to agree, a court shall determine the Administrator. No company may serve as Administrator, without the consent of all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Provision.

"**Notice Address**" means the address that must be used for giving all notices under this Provision (other than notices given in lawsuits, which may be given in accordance with the rules of the court). The initial Notice Address for you is the latest address we have on our files. The initial Notice Address for us is : SUNTRUST BANK, 3600 SunTrust Plaza, 303 Peachtree Street, N.E., Atlanta, Georgia 30308, attn: Ray Fortin, General Counsel, although we may give you notice at any time that we have changed our Notice Address.

**2.    STARTING AN ARBITRATION.** To start an arbitration, you or we must give written notice of an election to arbitrate, which notice may be given after a lawsuit has been filed and/or in papers filed in the lawsuit. If such a notice is given, the Claim(s) described in the notice shall be resolved by arbitration under this Provision and, to the extent consistent with this Provision, the applicable rules of the Administrator then in effect. If you elect to arbitrate a Claim, you can choose the Administrator in your notice. If we elect to arbitrate a Claim, you can choose the Administrator by giving us written notice of your selection within 20 days after the date of our notice; and we shall choose the Administrator if you do not timely do so. The arbitrator will be selected under the Administrator's rules, except that the arbitrator must be an attorney with at least ten years of experience or a retired judge unless the parties agree otherwise. Any party who wrongfully fails to comply with this Provision shall be liable to the other party for all reasonable costs, including attorneys' fees, incurred in enforcing this Provision.

**3.    LOCATION AND COSTS.** Any arbitration hearing that you attend will take place in a location that is reasonably convenient for you. So long as you act in good faith, we will bear any arbitration filing, administrative, hearing and similar fees which you are required to pay to pursue a Claim (whether the fees are incurred in the initial arbitration proceeding or in an appeal to a panel of arbitrators), to the extent that you would not be required to bear such fees in an appropriate court of law. Subject to the last sentence of Section 2 hereof, each party must pay for its own attorneys, experts and witnesses, regardless of who wins the arbitration, except where applicable law and/or the Administrator's rules provide otherwise.

**4.    GOVERNING LAW; OBTAINING INFORMATION (DISCOVERY).** This Provision involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. (the "FAA"), and not federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration. However, the laws of the state of "Governing Law" or similar terminology in your loan documents shall apply to the extent, and only to the extent, that state law is applicable under, and not preempted by, the FAA. The arbitrator shall be obligated to follow applicable substantive laws, statutes of limitation and privilege rules related to any Claim. The arbitrator shall award the remedies, if any, that would be available in an individual court proceeding if arbitration had not been elected. This includes, without limitation, compensatory, statutory and punitive damages (which shall be governed by the constitutional standards applicable in judicial proceedings); declaratory, injunctive and other equitable relief; and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the grounds for his or her decision.

**5.    NO CLASS ACTIONS, ETC.** Notwithstanding any other provision in this Provision to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right: (a) to participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; or (b) to join or consolidate Claims with claims of any person other than you. No arbitrator shall have authority to conduct any arbitration in violation of this provision.

**6.    EFFECT OF ARBITRATION AWARD.** Any court with jurisdiction may enter judgment upon the arbitrator's award. The arbitrator's award will be final and binding, except for: (1) any appeal right under the FAA; and (2) Claims involving more than $50,000, in which event any party may appeal the award (regardless of the amount) to a three-arbitrator panel appointed by the Administrator, which will reconsider de novo any aspect of the initial award that is appealed, and whose decision will be final and binding except for any appeal right under the FAA.

**7.    CONTINUED EFFECT OF ARBITRATION PROVISION; SEVERABILITY; CONFLICTS.** This Provision shall survive (1) any modification, extension or forbearance of or under the Credit documents; (2) your full repayment of the Credit; (3) any sale or transfer of the Credit; (4) any foreclosure or other legal proceeding by us to collect a debt owed by you; (5) the transfer of any property securing the Credit; (6) any bankruptcy (except where prohibited by bankruptcy law); and (7) any rescission by you or attempt by you to rescind the Credit pursuant to any applicable law. If any portion of this Provision (other than Section 5(a)) cannot be enforced, the rest of this Provision will continue to apply. However, if Section 5(a) is held invalid in a proceeding in which you and we are involved, subject to the right to appeal such holding, the entire Provision (except this sentence) shall be null and void with respect to such proceeding.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Deed:

**Amendments.** What is written in this Security Deed and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Security Deed. To be effective, any change or amendment to this Security Deed must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Security Deed are for convenience purposes only and are not to be used to interpret or define the provisions of this Security Deed.

### SECURITY DEED
### (Continued)

Page 7

**Governing Law.** This Security Deed will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Georgia without regard to its conflicts of law provisions. This Security Deed has been accepted by Lender in the State of Georgia.

**Joint and Several Liability.** All obligations of Grantor under this Security Deed shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Security Deed.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Security Deed unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Security Deed. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Security Deed is not valid or should not be enforced, that fact by itself will not mean that the rest of this Security Deed will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Security Deed even if a provision of this Security Deed may be found to be invalid or unenforceable.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Security Deed is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Merger.** There shall be no merger of the interest or estate created by this Security Deed with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Security Deed on transfer of Grantor's interest, this Security Deed shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Security Deed and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Security Deed or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Security Deed.

**Waiver of Notice and Hearing and Homestead Exemption.** Grantor expressly waives: (1) any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the Indebtedness, or any part of the Indebtedness. All waivers by Grantor in this provision have been made voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

**DEFINITIONS.** The following words shall have the following meanings when used in this Security Deed:

**Borrower.** The word "Borrower" means CLAIRE D LUCAS and LANSDALE A LUCAS and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated April 30, 2007, **with credit limit of $36,700.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is April 30, 2027. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9801, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Security Deed in the events of default section of this Security Deed.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Security Deed.

**Grantor.** The word "Grantor" means CLAIRE D LUCAS and LANSDALE A LUCAS.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Security Deed, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Security Deed.

**Lender.** The word "Lender" means SunTrust Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, mobile homes, modular homes, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached, affixed to the Real Property excluding only that property which by operation of law is Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**SECURITY DEED**
**(Continued)**

Page 8

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Security Deed less and except the Personal Property.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Security Deed.** The words "Security Deed" mean this Security Deed between Grantor and Lender, and includes without limitation all assignments and security interest provision relating to the Personal Property and the Rents.

**IN WITNESS WHEREOF, THIS SECURITY DEED HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS SECURITY DEED IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY DEED IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

Signed, Sealed and Delivered in the presence of:

x _____
Unofficial Witness
Dawn Dodd

_____ County
Notary Public

(NOTARY SEAL)

My Commission Expires: 6/17/08

GRANTOR:

x _____ (Seal)
CLAIRE D LUCAS

x _____ (Seal)
LANSDALE A LUCAS

LASER PRO Lending, Ver. 5.34.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  GA L\...\LUCS.FC  TR-728499  PR-ACCW

SUNTRUST BANK
CORPORATE
SEAL
GEORGIA

Deed Book 19952 Pg 630
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

H124FRNT

## SCHEDULE A

THE FOLLOWING PROPERTY:

THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT(S) 79
OF DISTRICT 16, DEKALB COUNTY, GEORGIA, BEING LOT(S) 69, BLOCK
2, BROOKS MILL SUBDIVISION, AS PER PLAT RECORDED IN DEKALB
COUNTY, GEORGIA RECORDS.

BEING AND INTENDING TO DESCRIBE THE SAME PREMISES CONVEYED IN
A DEED RECORDED 03/16/2005, IN BOOK 17218, PAGE 34, IN DOC NO.
17218v34.

KNOWN AS: 4123 BROOKS MILL DR

PARCEL: 16-079 -02-147

**2007643542**    DEED BOOK **20487** Pg **380**
Filed and Recorded:
12/6/2007 3:13:23 PM
Georgia Intangible Tax Paid $75.00

**Linda Carter**
Clerk of Superior Court
DeKalb County, Georgia

WHEN RECORDED RETURN TO:

FISERV LENDING SOLUTIONS
350 NORTH ORLEANS ST
RECEIPT & DISPATCH 8TH FLOOR
CHICAGO IL 60654

Prepared By: Diana Bass / 20073031019310 / FLS / QCPR

---

 SUNTRUST

## MODIFICATION OF SECURITY DEED



*STI+0002007303I019310+DOTM*

THIS MODIFICATION OF SECURITY DEED dated November 15, 2007, is made and executed between CLAIRE D LUCAS, whose address is 4123 BROOKS MILL DRIVE, LITHONIA, GA 300384144, AND; LANSDALE A LUCAS, whose address is 4123 BROOKS MILL DRIVE, LITHONIA, GA 300384144. (referred to below as "Grantor") and SunTrust Bank, whose address is 1945 The Exchange - Suite 250, Atlanta, GA 30339 (referred to below as "Lender").

SECURITY DEED. Lender and Grantor have entered into a Security Deed dated April 30, 2007 (the "Security Deed") which has been recorded in DEKALB County, State of Georgia, as follows:

05-16-2007 in OR/Deed Book 19952 at Page 622, in the amount of $36,700.00 in the Clerk's Office of (County/City of) DEKALB and State of GA.

The maximum aggregate amount of principal to be secured at any one time is increased:

From:    THIRTY SIX THOUSAND SEVEN HUNDRED DOLLARS AND 00/100
($36,700.00)

To:    SIXTY ONE THOUSAND SEVEN HUNDRED DOLLARS AND 00/100
($61,700.00).

REAL PROPERTY DESCRIPTION. The Security Deed covers the following described real property located in DEKALB County, State of Georgia and is described as follows:

See the exhibit or other description document which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as 4123 BROOKS MILL DR, LITHONIA, GA 300384144.

MODIFICATION. Lender and Grantor hereby modify the Security Deed as follows:

("XX" Represents applicable modifications to above referenced mortgage)

XX  WHEREAS, Borrower has requested an increase in the amount of the credit line and Bank has agreed to increase the credit limit, on the terms and conditions set forth herein; and

XX  The Bank hereby agrees to extend the time for payment of the Agreement and Security Instrument and Borrower agrees to pay same and any advances made pursuant to the Access 3 line of credit as set forth in the Renewal Agreement, executed by Borrower on the date hereof, in the amount of the unpaid principal balance of the Agreement, plus accrued interest, costs, and expenses with a maturity date of 11-15-2037. No new monies have been advanced unless the box below is checked.

XX  In order to evidence an increase in the credit line as contained in the Agreement, as contemplated hereby, the Renewal Agreement and the Security Instrument are hereby amended to provide for an increase in the credit limit in the amount of $25,000.00.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Security Deed shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms.  Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Security Deed as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Security Deed (the "Note"). It is the intention of Lender to retain as liable all parties to the Security Deed and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Security Deed does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions. Grantor hereby ratifies and affirms that Grantor's liability shall continue in full force and effect through and including the Note's now extended maturity date and that Grantor has no defenses, setoffs, or other claims against Lender arising out of this credit facility. If it is determined that any other person or entity other than Lender shall have a lien, encumbrance, or claim of any type which has a legal priority over any term of this Modification, the original terms of the Note and Mortgage shall be severable from this Modification and separately enforceable from the terms thereof as modified hereby in accordance with their original terms, and Lender shall maintain all legal or equitable priorities which were in existence before the date of execution of this Modification. It is understood by and is the intention of the parties hereto that any legal or equitable priorities of Lender over any party which were in existence before the date of execution of this Modification shall remain in effect after the execution of this Modification.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF SECURITY DEED AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF SECURITY DEED IS DATED NOVEMBER 15, 2007.

IN WITNESS WHEREOF, THIS MODIFICATION HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS MODIFICATION IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MODIFICATION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DEED BOOK 20487 Pg 381

## MODIFICATION OF SECURITY DEED
### (Continued)

Page 2

Signed, Sealed and Delivered in the presence of:

x _Helena Thompson_   Orchestra
**Unofficial Witness**      Thompson

_____
Notary Public _____   County

(NOTARY SEAL)

My Commission expires:

TONYA B CLEVELAND
Notary Public
Walton County
State of Georgia
My Commission Expires Apr 4, 2011

**GRANTOR:**

x _Claire D. Lucas_   (Seal)
**CLAIRE D LUCAS**

x _Lansdale A Lucas_   (Seal)
**LANSDALE A LUCAS**

**LENDER:**

**SUNTRUST BANK**

x _Diana Bass_   (Seal)
**Authorized Signer**   DIANA BASS

LASER PRO Lending, Ver. 5.34.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - GA  c:\LPI\CFI\LPL\G201.FC  TR-517539  PR-ACON



SUNTRUST BANK
CORPORATE
SEAL
GEORGIA

DEED BOOK 20487 Pg 382
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

H3312759

# SCHEDULE A

THE FOLLOWING PROPERTY:

THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT(S) 79 OF DISTRICT 16, DEKALB COUNTY, GEORGIA, BEING LOT(S) 69, BLOCK 2, BROOKS MILL SUBDIVISION, AS PER PLAT RECORDED IN DEKALB COUNTY, GEORGIA RECORDS.

BEING AND INTENDING TO DESCRIBE THE SAME PREMISES CONVEYED IN A DEED RECORDED 03/16/2005, IN BOOK 17218, PAGE 34.

KNOWN AS: 4123 BROOKS MILL DR

PARCEL: 16-079 -02-147

# EXHIBIT C

# Property Appraisal Department

**Property Overview**           **9/2/2014 3:31:03 PM**

Close   Print

| Parcel ID: | **16 079 02 147** |
|---|---|

To view map, click on parcel ID number.

## Owner Information

| | | | |
|---|---|---|---|
| **Tax District** | 04 - UNINCORPORATED | **Zoning** | R100 - SF RES DIST |
| **Jan. 1st Owner** | LUCAS CLAIRE D OR | **Land Use** | 101 - Residential 1 family |
| **Co-Owner** | LUCAS LANSDALE A | **Land Unit** | 1 LOT |
| **Current Owner** | LUCAS CLAIRE D OR | **Calculated Acreage** | 0 |
| **Co-Owner** | LUCAS LANSDALE A | **Deeded Acreage** | 0.4 |
| **Owner Address** | 4123 BROOKS MILL DR LITHONIA GA 30038-4144 | **Neighborhood** | 1720 |
| **Property Address** | 4123 BROOKS MILL DR | **Property Class** | R3 - RESIDENTIAL LOT |

## Appeal Status

| | |
|---|---|
| **Date Notice Mailed** | 5/30/2014 |

| | **2014** | **2013** |
|---|---|---|
| **Appeal Code** | N - C.O.A. Notice | N - C.O.A. Notice |
| **Process Code** | | |
| **Hearing Date** | | |
| **Hearing Time** | | |

## Assessment Notice

You may need to download Adobe Acrobat Reader. It is available at 

### Tax Year - ASMT Notice or Letter

2014 - Notice1
2013 - Notice1
2012 - Notice1

## Building Characteristics

| | | | |
|---|---|---|---|
| **Year Built** | 2000 | **Square Footage** | 3,658 |
| **Condition Code** | AVERAGE | **Unfinished Basement** | 1,717 Sq. Ft. |
| **Quality Grade** | GOOD PLUS | **Finished Basement** | 0 Sq. Ft. |
| **Air Conditioning** | YES | **Bedrooms** | 3 |
| **Fireplace** | 1 | **Bathrooms** | 2.5 |
| **Stories** | 2 | | |

## Current Appraised & Assessment Value

| Tax Year | Total Appraised | Taxable Land | Taxable Imp. | Total Taxable | Total Taxable Assessment (40%) |
|---|---|---|---|---|---|
| 2014 | $158,200 | $67,300 | $90,900 | $158,200 | $63,280 |

## Sales History

| Book/Page | Sale Date | Deed Type | Sale Condition | Sale Price |
|---|---|---|---|---|
| 19850 - 00454 | 3/30/2007 | WD - WARRANTY DEED | 2 - PARTIAL INTEREST | $0.00 |
| 17218 - 00034 | 3/1/2005 | WD - WARRANTY DEED | H - SALES FROM BANK | $289,000.00 |
| 17072 - 00631 | 1/4/2005 | DP - DEED UNDER POWER | F - FORECLOSURE OR BANKRUPTCY | $0.00 |
| 11437 - 00293 | 5/31/2000 | WD - WARRANTY DEED | 0 - VALID SALE FMV | $289,900.00 |
| 10939 - 00001 | 2/9/1999 | WD - WARRANTY DEED | 1 - MULTIPLE PARCEL SALE | $70,000.00 |
| 09851 - 00591 | 2/19/1998 | WD - WARRANTY DEED | S - NEW SUBDIVISION ORIG DEED | $0.00 |

Sales which occurred prior to January 1 of this year were used to establish values for the current year. All sales which take place after January 1 will be considered for next year's valuations. These sales are provided for your convenience and may not have been verified or confirmed by our staff. We reserve the right to edit as needed.

| Sales Data Search | Detailed Property Data | Property Tax Data |
|---|---|---|

2014

## Parcel ID :16 079 02 147

Print    Back

| Land Data | | | | |
|---|---|---|---|---|
| **Neighborhood** | **Commercial Land Use** | **Zoning** | **Unit Type** | **Unit Size** |
| 1720 - 101 | N/A | R100 - SF RES DIST | Gross | 1.00 |

### Building Information

**Building #1 - Residential**

| Building Characteristics | | | |
|---|---|---|---|
| **Improvement Type** | 09-SINGLE FAMILY RESIDENTIAL | **Condition** | AVERAGE |
| **Quality Grade** | GOOD PLUS | **Economic Obsolescence** | |
| **Actual Year Built** | 2000 | **Functional Obsolescence** | |

| Building Refinements | | | | | |
|---|---|---|---|---|---|
| **Baths** | 2.5 | **Bedrooms** | 3 | **Basement Area** | 1,717 | **Finished Basement** | 0 |
| **Fireplaces** | 1 | **Air Conditioning** | YES | **Number Story** | 2 | **Square Footage** | 3,658 |

| Building Permit Data | | | | |
|---|---|---|---|---|
| **Permit Number** | **Permit Date** | **Completion Date** | **Permit Amount** | **Description** |
| 74689 | 8/25/1999 | 12/29/2000 | 208,077 | NEW CONSTRUCTION |

| History of Values | | | | | |
|---|---|---|---|---|---|
| **Tax Year** | **Total Appraised** | **Taxable Land** | **Taxable Improvement** | **Total Taxable** | **Total Assessment** |
| 2014 | 158,200 | 67,300 | 90,900 | 158,200 | 63,280 |
| 2013 | 158,200 | 67,300 | 90,900 | 158,200 | 63,280 |
| 2012 | 158,200 | 67,300 | 90,900 | 158,200 | 63,280 |
| 2011 | 215,200 | 68,000 | 147,200 | 215,200 | 86,080 |
| 2010 | 215,200 | 68,000 | 147,200 | 215,200 | 86,080 |
| 2009 | 270,200 | 64,600 | 205,600 | 270,200 | 108,080 |
| 2008 | 358,400 | 64,600 | 293,800 | 358,400 | 143,360 |
| 2007 | 358,400 | 64,600 | 293,800 | 358,400 | 143,360 |
| 2006 | 317,900 | 27,500 | 290,400 | 317,900 | 127,160 |
| 2005 | 317,900 | 27,500 | 290,400 | 317,900 | 127,160 |

**For information on property characteristics, contact (404) 371-2471.**

Back